UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MEGAN STONE and CHRISTINE CAROSI,

            Plaintiffs,

    v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al.,

            Defendants.

CASE NO. C16-5383 BHS

ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND DEFENDANT'S MOTION TO STAY PENDING APPEAL

      This matter comes before the Court on Plaintiffs Megan Stone ("Stone") and Christine Carosi's ("Carosi") (collectively, "Plaintiffs") motion to remand (Dkt. 16) and Defendant Geico General Insurance Company's ("Geico") motion to stay pending appeal (Dkt. 39). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies the motions for the reasons stated herein.

ORDER - 1

## I. PROCEDURAL AND FACTUAL BACKGROUND

Stone was involved in a hit and run car accident on May 22, 2014.  Dkt. 3-2 ¶ 1.3. Stone had an automobile insurance policy with Geico. *Id.* ¶ 2.1; Dkt. 12-1.  Stone was unable to use her car for about 105 days while Geico investigated her claim and while her car was being repaired.  Dkt. 3-2 ¶ 1.5.

On June 17, 2015, Stone filed a class action complaint against Geico[1] in Pierce County Superior Court.  *Id.*  Stone claims Geico failed to pay her for "loss of use" damages.  *Id.* ¶¶ 1.6–1.7.  Stone sought to certify the following class:

> All GEICO insureds with Washington policies issued in Washington State, where GEICO determined the loss to be covered under the Underinsured Motorist (UIM) coverage, and their vehicle suffered a loss requiring repair, or the vehicle was totaled, during which time they were without the use of their vehicle, for a day or more.
>
> Excluded from the Class are the assigned judge, the judge's staff and family, GEICO employees, those who received payment for substitute transportation from GEICO during the entire period they were without the use of their vehicle . . . .

*Id.* ¶¶ 5.3.  Stone claimed there would be about 5,000 class members and the average damages would be about $140 per class member. *Id.* ¶¶ 3.2–3.3.  Based on these numbers, Stone alleged the amount in controversy would be at most $700,000.  *Id.* ¶ 3.3. Stone asserted a single breach of contract claim, and sought compensatory damages, injunctive and equitable relief, and attorney's fees. *Id.* ¶¶ 6.1–6.5, 7.1.

---

[1] Stone named seven Geico-related insurers as defendants in her complaint.  For simplicity, the Court refers to all defendants as "Geico" in this order.

1   On February 18, 2016, Plaintiffs deposed Geico's Rule 30(b)(6) designee, David Antonacci ("Antonacci").  Dkt. 9-3, Deposition of David Antonacci ("Antonacci Dep."). Antonacci testified that about 18,000 Geico insureds had filed UIM claims during the class period in Washington.  *Id.* at 13:2–21.  Antonacci further testified that Geico possessed information regarding the average price it paid for rental cars during the class period.  *Id.* at 22:9–14, 39:24–40:21.  These numbers were produced in a supplemental response to a discovery request showing that the average daily rate is approximately $35/day.  Dkt. 18-1 at 8.

On May 10, 2016, Stone filed an amended complaint, which added Carosi as a named plaintiff.  Dkt. 1-2 ("Comp.").  Carosi was involved in a rear-end collision while insured by Geico.  *Id.* ¶ 1.6.  Carosi was unable to use her car for about 35 days while Geico investigated her claim and while her car was being repaired.  *Id.* ¶¶ 1.6, 1.8, 3.2.  Plaintiffs' amended complaint contains the same proposed class definition, class allegations, breach of contract claim, and requests for relief.  *Compare* Dkt. 3-2, *with* Comp.

On May 16, 2016, Plaintiffs moved for class certification.  Dkt. 3-50.  Plaintiffs sought to certify the same class pled in their original complaint.  *Id.*  To support their motion, Plaintiffs provided a declaration from their statistician, Dr. Bernard Siskin ("Dr. Siskin"), who explained how the number of class members and the average damages per class member could be determined.  Dkt. 17-6, Declaration of Bernard Siskin ("Siskin Dec.") ¶¶ 4–5.

On May 20, 2016, Geico removed the action to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Dkt. 2-1. Geico alleges the proposed class may include as many as 22,929 members and the average damages may be $321.30 per class member. *Id.* at 4. Based on these numbers, Geico asserts there is potentially $7,367,087.70 in controversy. *Id.*

On June 14, 2016, Plaintiffs moved to remand. Dkt. 16. On July 5, 2016, Geico responded. Dkt. 23. On July 8, 2016, Plaintiffs replied. Dkt. 30. On July 13, 2016, Geico filed a surreply, seeking to strike a declaration submitted by Plaintiffs with their reply.[2] Dkt. 33.

On July 28, 2016, the Court granted Plaintiffs' motion to remand. Dkt. 35. On August 11, 2016, Geico filed a motion for reconsideration. Dkt. 41. On August 16, 2016, the Court requested a response from Plaintiffs and set a briefing schedule. Dkt. 42. On August 26, 2016, Plaintiffs responded. Dkt. 46. On September 2, 2016, Geico replied. Dkt. 48.

## II. DISCUSSION

Plaintiffs move to remand, arguing Geico's notice of removal is untimely and Geico has not shown the amount in controversy exceeds CAFA's jurisdictional requirement of $5,000,000. Dkt. 16.

---

[2] "As a general rule, a movant may not raise new facts or arguments in his reply brief." *Karpenski v. Am. Gen. Life Co., LLC*, 999 F. Supp. 2d 1218, 1226 (W.D. Wash. 2014) (internal quotation marks omitted). Moreover, for all the evidentiary reasons set forth in Geico's surreply, Plaintiffs' offered evidence is inadmissible. Therefore, the Court grants Geico's motion to strike, and the Court will not rely on attorney Scott Nealey's declaration in considering the issues.

## A. CAFA Removal Standard

"A defendant generally may remove a civil action if a federal district court would have original jurisdiction over the action." *Allen v. Boeing Co.*, 784 F.3d 625, 628 (9th Cir. 2015). CAFA vests federal district courts with original jurisdiction over class actions involving more than 100 class members, minimal diversity, and at least $5,000,000 in controversy, exclusive of interests and costs. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)). A defendant seeking removal under CAFA must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee*, 135 S. Ct. at 551. The burden of establishing removal jurisdiction remains on the party seeking removal. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). There is no presumption against removal under CAFA. *Dart Cherokee*, 135 S. Ct. at 554.

## B. Amount in Controversy

To satisfy CAFA's amount in controversy requirement, the removing defendant must plausibly allege in the notice of removal that the amount in controversy exceeds $5,000,000. *Id.* If the plaintiff challenges the defendant's allegation, the defendant must then establish by a preponderance of the evidence that CAFA's amount in controversy requirement has been satisfied. *Id.* at 554. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Both parties may submit

1  evidence outside the complaint, including affidavits, declarations, or other summary-
2  judgment-type evidence. *Id.* at 1197. "Under this system, a defendant cannot establish
3  removal jurisdiction by mere speculation and conjecture, with unreasonable
4  assumptions." *Id.*
5     In this case, the Court must consider the evidence submitted by the parties because
6  Plaintiffs have challenged Geico's allegation that the amount in controversy exceeds
7  $5,000,000. Both parties agree that the estimated amount of compensatory damages is
8  based on a simple equation as follows: (class size) * (average daily cost of a rental car) *
9  (number of days a rental car was necessary) = (total estimated compensatory damages).[3]
10 The parties, however, dispute the numbers that should be inserted in the left side of the
11 equation. With regard to the class size, Geico has submitted evidence that the class size
12 is potentially 19,811. Dkt. 29, Declaration of David Antonacci ("Antonacci Dec."), ¶ 13.
13 Plaintiffs dispute this number contending it is over-inclusive because it contains insured
14 excluded from the proposed class definition such as drivers that borrowed a car instead of
15 renting a car and drivers that received rental reimbursement. Dkt. 30 at 7. While
16 Plaintiffs' arguments seem valid, they fail to support the arguments with actual evidence.
17 For example, how many of Geico's potential class members had rental reimbursement?
18 Merely arguing that Geico's evidence is over-inclusive is insufficient to show that
19 Geico's number is mere speculation and conjecture. More importantly, Antonacci
20 specifically addressed the failure to exclude these insured from his search. Antonacci

---

[3] Geico combines the average daily cost number and the average days of loss of use number and provides an average rental payment number. Dkt. 27 at 8.

1  Dec., ¶ 14 (the exclusion requires a claim-by-claim analysis).  Plaintiffs fail to counter
2  this evidence.
3         Furthermore, Plaintiffs fault Geico for not including exclusions that do not appear
4  in Plaintiffs' proposed class.  For example, Plaintiffs argue that "GEICO failed to exclude
5  from their calculation all insureds that had their vehicle repaired in a single day" and all
6  insured with repair damages less than $1000.  Dkt. 30 at 5.  These lawyer-created
7  exclusions do not appear in Plaintiffs' proposed class.  While these facts may be
8  appropriate means to determine the actual class, Plaintiffs fail to provide authority for the
9  proposition that Geico must base its estimates in its notice of removal on Plaintiffs'
10 attorney's hypothetical exclusions in a subsequent and improperly submitted declaration.
11        Plaintiffs also argue that the Court may rely on "lawyer testimony" and other
12 evidence to proportionally reduce Geico's number.  Dkt. 30 at 8.  In *Turk v. USAA*, No.
13 3:14-cv-05878-RBL, Dkt # 29 (W. D. Washington, March 18, 2015), the insurer removed
14 asserting a potential class size of 18,362 members.  Similar to this case, this number
15 appears to have been based on every potential insured that submitted a claim without
16 accounting for insureds that were properly compensated or obviously did not have a
17 claim.  *Id*. at 2.  The court reduced the insured potential class size by 20% because a
18 "preponderance of the evidence supports the conclusion that the class as defined by Turk,
19 as estimated by USAA (minus 20% for those who had rental coverage) is approximately
20 14,500." *Id*. at 6.
21        Contrary to the insured in *Turk*, Plaintiffs have failed to submit any evidence of
22 over-inclusiveness.  At most, Dr. Siskin declares that "[u]sing sampling of claims files it

ORDER - 7

1  is possible to determine the slight degree of over-inclusiveness (and thus obtain an

2  accurate class size) . . . ." Dkt. 17–6, ¶ 5.  The Court declines to engage in speculation in

3  order to transform "slight over-inclusiveness" into an actual percentage.  Thus, there is an

4  absence of evidence to support Plaintiffs' position.  Moreover, simple discovery can

5  affirmatively resolve this issue and the Court declines to engage in advisory speculation

6  pending fact discovery.  Because the relevant issues pertain to the Court's subject matter

7  jurisdiction, it appears that Plaintiffs may move to remand at any time before final

8  judgment.  *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that

9  the district court lacks subject matter jurisdiction, the case shall be remanded.");

10 *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1002–4 (C.D. Cal. 2009) (motion to

11 remand raising subject matter jurisdiction question was timely even though it was filed

12 14 months after defendant removed).  Thus, if subsequent evidence undermines Geico's

13 proposed class size, then the Court will address that evidence when and if it is properly

14 presented.

15         Likewise, the Court will address Plaintiffs' allegations and insinuations that Geico

16 intentionally overinflated this number when and if actual evidence establishes such

17 accusations.  *See*, *e.g*., Dkt. 16 at 11 ("Antonacci could have generated a Class size that

18 matched or closely matched the actual Class . . . ."); Dkt. 30 at 3 ("Like GEICO's

19 improper 'include a bunch of people who are not in the Class' approach . . . ."); *id*. at 7

20 n.3 ("That fact that GEICO chose not to [exclude certain insureds], and instead

21 present[ed] a false and inflated figure, is yet another reason, why its assertions as to Class

22 size are inaccurate and must be rejected by this Court.").  However, on the current record,

the Court finds that Geico has shown, by a preponderance of the evidence, that the potential class size is 19,811.

With regard to the average daily cost and average days of loss, Geico contends that the average claim would be $324.03. Dkt. 27 at 8. Plaintiffs appear to accept this number in their reply, Dkt. 30 at 8, and Dr. Siskin seems to agree that Geico's method will "provide an accurate estimate of loss for the proposed Class and its members," Dkt. 17-6 at ¶ 7. Without evidence to the contrary, the Court finds that, by a preponderance of the evidence, $324.03 is the average claim amount. Therefore, Geico has shown that the amount in controversy is at least $6,419,358.33, which exceeds the jurisdictional minimum.

The parties also dispute whether the Court may include potential attorney's fees and damages for injunctive relief. Based on the complaint, both of these arguments are frivolous. Plaintiffs claim a breach of contract and request statutory attorney's fees, which they claim amount to $200. Dkt. 3-2, ¶ 7.1(4); Dkt. 30 at 8–9. With regard to injunctive relief, Plaintiffs seek injunctive relief only to enforce the damages award. Dkt. 3-2, ¶ 7.1(3). Thus, the Court declines Geico's request to include a lodestar attorney's fees amount of 25% of the estimated compensatory damages and injunctive damages of approximately one million per year for the next four years.

In sum, the Court concludes that Geico has met its burden and, based on the current record, has shown that the amount in controversy exceeds the jurisdictional minimum of $5,000,000. Accordingly, the Court denies Plaintiffs' motion to remand.

## C.   Untimely Removal

"The timeliness of removals pursuant to CAFA is governed by 28 U.S.C. § 1446(b)." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 884 (9th Cir. 2010). "[S]ection 1446(b) identifies two thirty-day periods for removing a case." *Id.* at 885. "The first thirty-day removal period is triggered 'if the case stated by the initial pleading is removable on its face.'" *Id.* (quoting *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005)). "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Id.* (quoting 28 U.S.C. § 1446(b)). "If the notice of removal was untimely, a plaintiff may move to remand the case back to state court." *Id.*

Neither party argues the first thirty-day removal period was triggered in this case. Geico asserts that Plaintiffs' motion for class certification provided the first indication that the amount in controversy exceeds $5 million, thereby triggering the second thirty-day removal period. Dkt. 2-1 at 2. According to Geico, Dr. Siskin's declaration in support of Plaintiffs' motion provided new information about the size of the proposed class and the average damages per class member, which caused Geico to reconsider the potential amount in controversy. Dkt. 23 at 13.

Dr. Siskin relied on Plaintiffs' class definition and Antonacci's deposition testimony to explain how the class size and the average damages for each class member could be determined. *See* Siskin Dec. ¶¶ 4–7 (citing Antonacci's deposition testimony). The information that Geico claims made this case removable—the number of UIM claims

in Washington and the average daily rental rate—was disclosed by its corporate representative in his deposition on February 18, 2016. Put another way, Plaintiffs' motion for class certification provided some information that was already available to Geico.

Deposition testimony may constitute "other paper" that triggers the second thirty-day removal period under § 1446(b). *Carvalho*, 629 F.3d at 886–87. Geico first argues that a defendant's deposition does not qualify as an "other paper" because the document must be "served by the *plaintiff* . . . ." Dkt. 41 at 5.[4] Geico claims that "[t]his distinction – from the plaintiff to the defendant – has been a material distinction for decades." *Id*. In making this assertion, Geico relies on Fifth Circuit law, which, in turn, relies on Supreme Court law that predates § 1446(b). *See Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 254 (5th Cir. 1961) (quoting *Great Northern Railway Co. v. Alexander*, 246 U.S. 276 (1918)). Despite the non-binding and ancient authority, Geico has failed to cite any binding authority that precludes a defendant's deposition from qualifying as an "other paper" received "by the defendant, through service or otherwise" under § 1446(b). Thus, until a higher court crafts a judicial exception, the Court concludes that receipt by Geico of Antonacci's deposition from the court reporter qualifies as an "other paper" under § 1446(b).

---

[4] Because Geico only briefly addressed the issue of timeliness in its original response (Dkt. 27 at 12–14), the Court will consider its arguments on reconsideration. Similarly, the Court will consider Plaintiffs' argument on reconsideration.

Next, Geico argues that the deposition testimony was insufficient to put them on notice that the case was removable. There is little to no question that the Antonacci deposition provided the relevant numbers of potential class size and average daily rate. Plaintiffs' problem, however, is that Antonacci testified only that, using Geico's computer system, it was possible to determine the average loss of use time period. *See* Dkt. 16 at 5–7. For example, Antonacci testified that, by using the computer system, he could identify the period of loss for most of the class and, if the insured used Geico's car rental vendors, the actual receipts would be in the system. Antonacci Dep., 31:10–71, 32:15–19, 33:19–22, 41:10-24. In fact, Antonacci did complete the searches and identified the average claim amount of $324.03. Antonacci Dec., ¶¶ 25–27. Plaintiffs fail to cite, and the Court is unable to find, evidence establishing that Antonacci ran these searches prior to the deposition or discussed the results of these or similar searches in the deposition. Thus, the Court agrees with Geico that there is a lack of evidence on a crucial fact.

In light of the relevant case law, the Court concludes that the ability to discover certain numbers in a database is significantly different than presenting the relevant numbers in a deposition. *Compare Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation"), *with Carvalho*, 629 F.3d at 887 ("From this testimony, Equifax could reasonably determine for the first time that the amount in controversy was at least $25,000 per class member [times 500 class members], or $12.5 million total.").

In other words, numbers being readily apparent would be sufficient to put a defendant on notice of the amount in controversy, whereas numbers being readily available *if* Geico searched its database is insufficient to put it on notice of the amount in controversy. The evidence in the current record supports the latter proposition. Therefore, the Court concludes that Geico could not reasonably conclude from the Antonacci deposition alone that the amount in controversy exceeded the jurisdictional limit and denies Plaintiffs' motion to remand on this issue.

**D.    Attorney's Fees**

Having denied Plaintiffs' motion to remand, the Court also denies Plaintiffs' request for attorney's fees. While the Court does not encourage a subsequent motion to remand, subject matter jurisdiction is an important issue that may be raised at any time. *See* 28 U.S.C. § 1447(c). Fees may be appropriate if Plaintiffs obtain evidence to show that Geico's proposed class size or proposed amount of damages was not objectively reasonable. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Finally, the Court will usually grant motions for over-length briefs. As such, the Court requests that the parties refrain from providing substantive arguments in footnotes. Not only are large footnotes distracting, but the arguments are more likely to be unintentionally overlooked.

//

//

//

//

### III. ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion to remand (Dkt. 16) is **DENIED** and Geico's motion for stay pending appeal (Dkt. 39) is **DENIED as moot**.

Dated this 12th day of October, 2016.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge